FOR THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MINSA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALMAC SYSTEM TRANSPORT, INC., | § | |
| ANDREWS LOGISTICS, INC.; BRADCO | § | |
| TRANSPORTATION SERVICES, INC.; | § | |
| BRAZOS LOGISTICS, INC.; DUSTIN | § | |
| BRUNSON d/b/a TD LOGISTICS; BWG | § | |
| DELIVERY SERVICE, LLC; B & W | § | |
| ENTERPRISE, LLC; CAL-PRO EXPRESS, | § | |
| INC.; CAL TEX FREIGHT BROKERAGE, | § | |
| LLC. CAPITAL PARTNERS SERVICES | § | |
| CORP.; CHARLIE ROSS d/b/a ROSS | § | |
| TRUCKING; CON-WAY FREIGHT, INC.; | § | CIVIL ACTION NO. |
| FLAMINGO TRUCKING, INC. FORTUNE | § | 5-09-CV-0275-C |
| TRANSPORTATION COMPANY; | § | |
| FREIGHT FUNDING, LLD; HARDER | § | |
| TRUCKING, LLC; J&S TRUCKING, INC.; | § | |
| L&D TRUCKING COMPANY; PETER | § | |
| LOEWEN d/b/a P&V TRANSPORT; | § | |
| LONGHORN EXPRESS, LP; MIDWEST | § | |
| COAST LOGISTICS INC.; CHARLES | § | |
| MELVENEY d/b/a MELVENEY | § | |
| TRANSPORT; MVT SERVICES, LLC; | § | |
| NBS TRANSPORT, INC.; PASCHALL | § | |
| TRUCK LINES, INC.; SANDERS | § | |
| TRANSPORTATION, INC.; SMS | § | |
| LOGISTICS, INC.; STERLING CITY | § | |
| BANCSHARES d/b/a FIRST NATIONAL | § | |
| BANK OF STERLING CITY, TEXAS; TCB | § | |
| TRANSPORTATION, INC.; TRUST | § | |
| TRANSPORT, LLC; UNITED | § | |
| CALIFORNIA DISCOUNT | § | |
| CORPORATION, UPS GROUND | § | |
| FREIGHT, INC.; U-LINE TRANSPORT, | § | |
| INC.; WESTERN EXPRESS, INC., | § | |
| | § | |
| Defendants. | | |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................2

   A.   Background of the Litigation ......................................................................2

       1.   Nature of the Case..............................................................................2

       2.   The Parties to the Lawsuit ................................................................2

       3.   Procedural Background.......................................................................3

II.   STATEMENT OF FACTS .................................................................................4

   A.   Jurisdictional Facts.....................................................................................4

   B.   FNB Enters Into a Factoring Agreement with Brazos .................................4

   C.   FNB Perfects its Security Interest in the Brazos Receivables ....................5

   D.   Brazos Enters Into a Transportation Agreement with Minsa......................6

III.   ARGUMENT AND AUTHORITIES................................................................7

   A.   Summary Judgment Standard ......................................................................7

   B.   Iqbal/Twombly Standard ............................................................................8

IV.   FNB's Claims Against Minsa ............................................................................9

   A.   Minsa's Interpleader Claim is Improper .....................................................9

       1.   Minsa's Interpleader is Improper Because there is No Legitimate Conflict as to the Owner of the Funds..............................................................10

          a.   FNB is the sole owner of the Minsa Invoices...............................10

          b.   FNB has a perfected security interest in the Minsa Invoices .......10

          c.   FNB Directly Notified Minsa of its Ownership Interest ...............12

       2.   Minsa's Interpleader is Improper because the Co-Defendants are not Adverse to One Another Thus There is No Single Fund...........................14

   B.   Minsa Should Not Recover Attorney's Fees on their Interpleader Complaint.................15

   C.   FNB's Indebtedness Claim Against Minsa................................................17

   D.   FNB's Claim for Attorneys' Fees .............................................................17

V.   Andrews/Navajo's Claims against FNB ...........................................................19

   A.   Andrews/Navajos' Constructive Trust Claim ...........................................20

       1.   Andrews/Navajo's Pleading Do Not Meet the Iqbal/Twombly Standards..............20

   B.   Andrews/Navajos' Claim for Injunctive Relief.........................................22

i

|  | 1. | Standard for Injunctive Relief | 22 |
|  | 2. | Likelihood of Success on the Merits | 23 |
|  | 3. | Irreparable Harm | 24 |
|  | 4. | Relative Harm and Public Interest | 25 |
| VI. | | CONCLUSION | 26 |
| VII. | | PRAYER | 27 |

3150801.7

# TABLE OF AUTHORITIES

Page(s)

CASES

*AEROSPACE WORKERS, LODGE NO. 2504 V. INTERCONTINENTAL MFG. CO.,*
    812 F.2D 219 (5TH CIR. 1987) ............................................................................7, 8

*ANDERSON V. LIBERTY LOBBY, INC.,*
    477 U.S. 242, 106 S. CT. 2505 (1986) ..............................................................8

*ASHCROFT V. IQBAL,*
    129 S. CT. 1937 (2009) ..................................................................................8, 9

*BARR V. WHITE OAK STATE BANK,*
    677 S.W.2D 707 (TEX. APP.–TYLER 1984, NO PET.) ....................................11

*BATON ROUGE OIL AND CHEM. WORKERS UNION V. EXXON MOBIL CORP.,*
    289 F.3D 373 (5TH CIR. 2002) ........................................................................8

*BEASLEY V. AVERY DENNISON CORP.,*
    2005 U.S. DIST. LEXIS 15133 (W.D. 2005) ..................................................23

*BEASLEY V. AVERY DENNISON CORP.,*
    2005 WL 1719222 (W.D.TEX.,2005) ..............................................................24

*BELL ATL. CORP. V. TWOMBLY,*
    550 U.S. 544 (2007) .....................................................................................8, 9

*BORG-WARNER ACCEPTANCE CORP. V. WOLFE CITY NAT'L BANK,*
    544 S.W.2D 947 (TEX. APP.– DALLAS 1976, NO WRIT) ...............................11

*BRADLEY V. KOCHENASH,*
    44 F.3D 166 (2ND CIR. 1995) ........................................................................14

*CADLE CO. V. 1007 JOINT VENTURE,*
    82 F.3D 102 (5TH CIR. 1996) ........................................................................18

*CANAL AUTH. OF FLA. V. CALLAWAY,*
    489 F.2D 567 (5TH CIR. 1974) ......................................................................23

*CELOTEX CORP. V. CATRETT,*
    477 U.S. 317, 106 S.CT. 2548 (1986) .............................................................7

*CONSOLIDATED RESTAURANT OPERATIONS INC. V. NATIONAL PROCESSING CO., LLC,*
    2002 WL 1432469, SLIP OP. (N.D. TEX. 2002) .............................................24

i

*ENGSTROM V. FIRST NAT'L BANK OF EAGLE LAKE*,
   47 F.3D 1459 (5TH CIR. 1995) .................................................................................7

*ENVTL. CONSERVATION ORG. V. BAGWELL*,
   2005 U.S. DIST. LEXIS 22027 (N.D. TEX. 2005).....................................................17

*ESTATE OF HAAS V. METRO-GOLDWYN-MAYER, INC.*,
   617 F.2D 1136 (5TH CIR. 1980) ............................................................................13

*FDIC V. REGISTRY HOTEL CORP.*,
   639 F. SUPP. 812 (N.D. TEX. 1986) ......................................................................13

*FISHER V. FIRST NAT'L BANK OF MEMPHIS*,
   584 S.W.2D 515 (TEX. APP.–AMARILLO 1979, NO WRIT) .......................................11

*FRANKLIN NAT'L BANK V. BOSER*,
   972 S.W.2D 98 (TEX. APP.–TEXARKANA 1998, PET. DENIED) .................................11

*FRESH AM. CORP. V. WAL-MART STORES, INC.*,
   2004 U.S. DIST. LEXIS 12377 (N.D. TEX. 2004).....................................9, 14, 15

*FRESH AM. CORP. V. WAL-MART STORES, INC.*,
   393 F. SUPP. 2D 411 (D. TEX. 2005) .....................................................................16

*GODWIN GRUBER, P.C. V. DEUSCHLE*,
   261 F. SUPP. 2D 682 (N.D. TEX. 2003) .................................................................20

*GREAT PLAINS TRUST CO. V. MORGAN STANLEY DEAN WITTER & CO.*,
   313 F.3D 305 (5TH CIR. 2002) ............................................................................23

*GULF OIL CORP. V. OLIVIER*,
   412 F.2D 938 (5TH CIR. 1969) ............................................................................16

*HOLLOWAY-HOUSTON, INC. V. GULF COAST BANK & TRUST*,
   224 S.W.3D 353 (TEX. APP. — HOUSTON 2006, NO PET.) ......................................13

*HOME OWNERS MGMT. ENTERS. V. MID-CONTINENT CAS. CO.*,
   2005 U.S. DIST. LEXIS 22524 (N.D. TEX. OCT. 3, 2005) ......................................18

*IN RE DALE*,
   2008 WL 4287058 (BANKR. S.D. TEX. 2008) .....................................................11

*IN RE LOFTIS*,
   40 S.W.3D 160 (TEX. APP. — TEXARKANA 2001, NO PET.).....................................20

*INTERFIRST BANK DALLAS, N.A. V. PUROLATOR COURIER CORP.*,
   608 F. SUPP. 351 (N.D. TEX. 1985) .......................................................................9

*INTERNATIONAL TURBINE SERVS., INC. V. VASP BRAZILIAN AIRLINES*,
   278 F.3D 494 (5TH CIR. 2002) ..............................................................................7

ii

JONES V. COOPER INDUS., INC.,
938 S.W.2D 118 (TEX. APP.—HOUSTON 1996, WRIT DENIED) .................................................12

KLINE V. O'QUINN,
874 S.W.2D 776 (TEX. APP.–HOUSTON 1994, WRIT DENIED) .................................................23

McCLURE V. BIESENBACH,
355 FED. APPX. 800 (5TH CIR. 2009) ..................................................................................9

METROPOLITAN LIFE INS. CO. V. BARRETTO,
178 F. SUPP. 2D 745 (S.D. TEX. 2001) ...............................................................................14

MISSISSIPPI POWER & LIGHT CO. V. UNITED GAS PIPE LINE CO.,
760 F.2D 618 (5TH CIR. 1985) .........................................................................................23

MONNIG'S DEP'T STORES, INC. V. AZAD ORIENTAL RUGS, INC.
(IN RE MONNIG'S DEP'T STORES, INC.), 929 F.2D 197 (5TH CIR. 1991).....................................20

MONTOYA V. FEDEX GROUND PACKAGE SYS.,
2010 WL 3081504 (5TH CIR. 2010)....................................................................................8

MORGAN V. FLETCHER,
518 F.2D 236 (5TH CIR. 1976) .........................................................................................24

NOELLER V. METROPOLITAN LIFE INS. CO.,
190 F.R.D. 202 (E.D. TEX. 1999) .....................................................................................16

PCI TRANSP. INC. V. FORT WORTH & W. R.R. CO.,
418 F.3D 535 (5TH CIR. 2005) .........................................................................................23

RECURSION SOFTWARE, INC. V. INTERACTIVE INTELLIGENCE, INC.,
425 F. SUPP. 2D 756 (N.D. TEX. 2006) ...............................................................................18

RHOADES V. CASEY,
196 F.3D 592 (5TH CIR. 1999) ...........................................................................................9

STATE OF TEXAS V. SEATRAIN INTERNATIONAL, S.A.,
518 F.2D 175 (5TH CIR. 1975) .........................................................................................23

TARBOX V. SORIS,
2004 BANKR. LEXIS 837 (BANKR. N.D. TEX. 2004) .......................................................12, 25

TROF, INC. V. MARSHALL,
2010 U.S. DIST. LEXIS 54552 (D. TEX. 2010)....................................................................15

WARE V. ANDERSON,
2010 WL 670031 (E.D. TENN. 2010) ...............................................................................15

WHEELER V. BLACKLANDS PROD. CREDIT ASS'N,
627 S.W.2D 846 (TEX. APP. — FORT WORTH 1982, NO WRIT)..............................................20

iii

WINTER V. NRDC, INC.,
129 S. CT. 365 (U.S. 2008) ..................................................................................................23

WISCONSIN GAS CO. V. FERC,
758 F.2D 669 (D.C. CIR. 1985) ...........................................................................................24

**STATUTES**

28 U.S.C. 1335 ...............................................................................................................................9

28 U.S.C 1335 AND 1367 ...............................................................................................................4

28 U.S.C. §§ 1391 (A)(2) AND 1397 ..............................................................................................4

Tex. Bus. & Com. Code Ann. § 9.203(B) ....................................................................................11

Tex. Bus. & Com. Code Ann. § 9.406(A) ....................................................................................13

Tex. Bus. & Com. Code § 9.308(A) ..............................................................................................11

Tex. Bus. & Com. Code §§ 9.310 AND 9.501(A)(2) ....................................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2) ..........................................................................18

Tex. Civ. Prac. & Rem. Code § 38.002 .........................................................................................17

Tex. Civ. Prac. Rem. Code 38.001 ...............................................................................................17

**OTHER AUTHORITIES**

FED. R. CIV. P. 8(A)(2) ....................................................................................................................8

Fed.R.Civ. P. 56 .....................................................................................................................2, 7, 8

FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ..............................................................................8

FEDERAL RULE OF CIVIL PROCEDURE 13(G) .................................................................................4

FOR THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MINSA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALMAC SYSTEM TRANSPORT, INC., | § | |
| ANDREWS LOGISTICS, INC.; BRADCO | § | |
| TRANSPORTATION SERVICES, INC.; | § | |
| BRAZOS LOGISTICS, INC.; DUSTIN | § | |
| BRUNSON d/b/a TD LOGISTICS; BWG | § | |
| DELIVERY SERVICE, LLC; B & W | § | |
| ENTERPRISE, LLC; CAL-PRO EXPRESS, | § | |
| INC.; CAL TEX FREIGHT BROKERAGE, | § | |
| LLC. CAPITAL PARTNERS SERVICES | § | |
| CORP.; CHARLIE ROSS d/b/a ROSS | § | |
| TRUCKING; CON-WAY FREIGHT, INC.; | § | CIVIL ACTION NO. |
| FLAMINGO TRUCKING, INC. FORTUNE | § | 5-09-CV-0275-C |
| TRANSPORTATION COMPANY; | § | |
| FREIGHT FUNDING, LLD; HARDER | § | |
| TRUCKING, LLC; J&S TRUCKING, INC.; | § | |
| L&D TRUCKING COMPANY; PETER | § | |
| LOEWEN d/b/a P&V TRANSPORT; | § | |
| LONGHORN EXPRESS, LP; MIDWEST | § | |
| COAST LOGISTICS INC.; CHARLES | § | |
| MELVENEY d/b/a MELVENEY | § | |
| TRANSPORT; MVT SERVICES, LLC; | § | |
| NBS TRANSPORT, INC.; PASCHALL | § | |
| TRUCK LINES, INC.; SANDERS | § | |
| TRANSPORTATION, INC.; SMS | § | |
| LOGISTICS, INC.; STERLING CITY | § | |
| BANCSHARES d/b/a FIRST NATIONAL | § | |
| BANK OF STERLING CITY, TEXAS; TCB | § | |
| TRANSPORTATION, INC.; TRUST | § | |
| TRANSPORT, LLC; UNITED | § | |
| CALIFORNIA DISCOUNT | § | |
| CORPORATION, UPS GROUND | § | |
| FREIGHT, INC.; U-LINE TRANSPORT, | § | |
| INC.; WESTERN EXPRESS, INC., | § | |
| | § | |
| Defendants. | | |

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 1

3150801.7

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST
NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS
PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.**

Pursuant to Rule 56 of the Fed. R. Civ. P., First Sterling City Bancshares d/b/a First

National Bank of Sterling City, Texas ("FNB") files this Brief in Support of Its Motion for

Summary Judgment on Plaintiff and Counter Defendant Minsa Corporation's ("Minsa")

Complaint in Interpleader, its Counterclaim against Minsa for indebtedness and attorneys' fees

and Cross-Plaintiffs Andrews Logistics, Inc. ("Andrews"), and Navajo Express, Inc.'s

("Navajo") (collectively "Andrews/Navajo") Crossclaims asserted against FNB.[1]

## I.   INTRODUCTION

### A.   Background of the Litigation

#### 1.   Nature of the Case

This is a simple lien priority case.  Upon reviewing the pleadings, contractual agreements

between the parties, filings of financial statements with the Secretary of State and transactions

involving the various parties, it is clear which party has the superior claim to the amounts that

Minsa has deposited with the Court.  Additionally, FNB requests that the Court determine

whether Minsa is indebted to FNB for the entire amounts that it owed to Brazos on the

outstanding receivables.

#### 2.   The Parties to the Lawsuit

FNB is a national bank located in Sterling City, Texas.  Minsa is a manufacturer of corn

---

[1] It appears from the Docket Sheet and the caption of the pleadings that Andrews has filed two separate crossclaims against FNB.  *See* Docket Nos. 154 and 156.  The allegations of both crossclaims are virtually identical, but in No. 154 Andrews seeks damages in the amount of $76,825.00 and in No. 156 Andrews seeks damages in the amount of $3,765.00.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 2

flour products.  The Co-Defendants Carriers (including Andrews/Navajo) are trucking carriers that are hired to transport and deliver products for its customers.  Prior to terminating its operations in October of 2009, Co-Defendant Brazos was a transportation broker based in Lubbock, Texas.  Brazos provided transportation services by hiring dozens of independent truckers and trucking companies, including the Co-Defendant Carriers, to provide transportation services to various entities, including Minsa, in order for them to ship their products to customers or buyers in hundreds of cities.

### 3.    Procedural Background

On December 29, 2009, Minsa filed a Complaint in Interpleader naming various entities, including others who made payment demands on Minsa, for amounts owed by Brazos Logistics, Inc. ("Brazos") [Docket No. 1].  On February 1, 2010, FNB answered and asserted a counterclaim for indebtedness and attorneys' fees against Minsa [Docket No. 39].  On July 13, 2010, Minsa filed its Second Amended Complaint in Interpleader which added additional parties [Docket No. 89].  On July 27, 2010, FNB filed its First Amended Answer to Plaintiff's Second Amended Complaint in Interpleader, Counterclaim and Crossclaim.  [Docket No. 96].

On August 4, 2010, Minsa filed its Answer to FNB's First Amended Counterclaim. [Docket No. 116].  On August 17, 2010, Andrews/Navajo filed a Motion to Leave to File Amended Answer to Plaintiff's Second Amended Complaint in Interpleader, Amended CounterClaim and Crossclaim.  [Docket Nos. 137 and 138].  On September 15, 2010, the Court granted leave for Andrews/Navajo to assert claims for the first time against FNB in Andrews/Navajo's crossclaims.  [Docket Nos. 153, 154, 155 and 156].  On September 29, 2010, FNB filed answers to Andrews/Navajo's crossclaims. [Docket Nos. 159 and 160].

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. -- Page 3

3150801.7

## II.   STATEMENT OF FACTS

### A.   Jurisdictional Facts

The following facts support FNB's Motion for Summary Judgment.   The Court has jurisdiction over this matter pursuant to 28 U.S.C 1335 and 1367 and Federal Rule of Civil Procedure 13(g).[2] Venue is proper in Lubbock Division of the Northern District of Texas pursuant to 28 U.S.C. §§ 1391 (a)(2) and 1397.[3] FNB is a national bank duly chartered under the laws of the United States of America.[4] Minsa is an Iowa corporation with its principal place of business in Muleshoe, Texas.[5]   Andrews is a Texas Corporation with its principal place of business in Irving, Texas.[6]   Navajo is a Texas Corporation with its principal place of business in Dallas, Texas.[7]

### B.   FNB Enters Into a Factoring Agreement with Brazos

In August of 2000, FNB entered into a Factoring Agreement with Brazos for Brazos to factor certain invoices or accounts receivable to FNB ("Brazos Receivables").[8] The Factoring Agreement was in effect in 2009 when Minsa contracted with Brazos for transportation services.[9] Pursuant to Section 2.1 of the Factoring Agreement, "the Bank hereby purchase[d] from [Brazos], and [Brazos] hereby assign[ed] and s[old] to the Bank, as absolute owner, [Brazos']

---

[2] FNB's First Amended Answer to Minsa's Second Amended Complaint in Interpleader at p. 2, 1.7 ("FNB Answer to Interpleader"); Andrews' Amended Answer to Plaintiff's Second Amended Complaint in Interpleader, Amended Counterclaim and Crossclaims at p. 2 ¶ 2 (Andrews Amended Answer (Docket Nos. 154 and 156)"); Navajo's Amended Answer to Plaintiff's Second Amended Complaint in Interpleader, Amended Counterclaim and Crossclaims at p. 2 ¶ 2 ("Navajo Amended Answer").

[3] FNB Answer, p. 3, 1.8; Andrews Amended Answer (Docket Nos. 154 and 156), p. 2 ¶ 3; Navajo Amended Answer, p. 2 ¶ 3.

[4] FNB Answer to Interpleader at p. 2.

[5] Minsa Corporation's Second Amended Complaint in Interpleader ("Minsa Complaint") at 1.01, Docket No. 89.

[6] Andrews Amended Answer (Docket Nos. 154 and 156), p. 6 ¶ 1.

[7] Navajo Amended Answer, p. 6 ¶ 2.

[8] Affidavit of Scot Long, Vice President of FNB ("Long Affidavit"), attached hereto as Exhibit 1; FNB App. 0001-4 and Exhibit 2; FNBApp. 0005-13.

[9] Long Affidavit and Exhibit 2; FNB App. 0014-39.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 4

entire interest in such of its currently outstanding Receivables . . . <u>as well as its future</u> <u>Receivables represented by Invoices [Brazos] deliver[ed] to the Bank.</u>[10] (Emphasis added).

Pursuant to Section 3.3 of the Factoring Agreement, Brazos granted the Bank "a security interest in all of its present and future accounts, instruments, contract rights, chattel paper, documents and general intangibles . . . and any proceeds from those ... to secure all of [Brazos'] Obligations."[11]   In Section 4.1 of the Factoring Agreement, Brazos represented that the "Receivables ... [were] free and clear of all security interests, liens, and claims whatsoever of third parties."[12]   Lastly, pursuant to Section 4.2 of the Factoring Agreement, the "Receivables will not be subject to any deduction, offset, defense, or counterclaim."[13]

### C.    FNB Perfects its Security Interest in the Brazos Receivables

On December 7, 2000, FNB perfected its security interest in the Brazos Receivables, which would include the Minsa Invoices, by filing a Financial Statement with the Texas Secretary of State covering the following Brazos' property:

> All of Debtor's accounts, notes, drafts, acceptances, instruments, chattel paper and general intangibles, and all guaranties and suretyship agreements relating thereto and all security for the payment or performance thereof, whether now existing or hereafter existing; all proceeds, monies, income, benefits, collections and products thereof and thereon and attributable or accruing thereto; all goods which give rise or may give rise thereto, including, without limitation, all returned or repossessed goods and other goods the sale or delivery of which gave rise or may give rise to any of such accounts, notes, drafts, acceptances, instruments, chattel paper or general intangibles, including the right of stoppage in transit, and the products and proceeds thereof; and all rights of Debtor, whether or not earned by performance, under contracts to sell or lease goods or render services, and all proceeds thereof.[14]

---

[10] Long Affidavit and Exhibit 2; FNBApp. 0006 ¶ 2.1.
[11] Long Affidavit and Exhibit 2; FNBApp. 0008 ¶ 3.3.
[12] Long Affidavit and Exhibit 2; FNBApp. 0008 ¶ 4.1.
[13] Long Affidavit and Exhibit 2; FNBApp. 0008 ¶ 4.2.
[14] Long Affidavit and Exhibit 4; FNBApp. 00040-42.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
<u>AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u> – Page 5

### D.    Brazos Enters Into a Transportation Agreement with Minsa

In January of 2009, Minsa entered into a "Transportation Agreement" with Brazos wherein Brazos agreed to provide transportation services for Minsa.[15]  Under paragraph 6 of the Transportation Agreement entitled "Invoices and Payments,"

> Except for shipments made on a freight charge "collect" basis, the Contractor [Brazos] shall invoice Customer [Minsa] promptly following delivery of each shipment under this Agreement.  Payment of each invoice shall be made by Customer **within sixty (60) days** after its receipt of such invoice and related documentation , including a Delivery Receipt and a valid uncontested freight bill for the involved shipment.  All invoices Delivery Receipts, freight bills, and other documentation relating to a shipment hereunder shall be sent to Customer at the invoicing address specified on the Bills of Lading relating to such shipment or at such other address as Customer may from time to time specify to Contractor in writing.[16]

Brazos subcontracted with other transportation carriers, including Andrews/Navajo, to transport Minsa's goods.[17]  Brazos would then invoice Minsa for services rendered.[18]  In October of 2009, Brazos ceased its brokerage operations.[19]  On December 1, 2009, FNB notified Minsa that they had purchased the accounts receivable or invoices of Brazos and are the rightful owners of the invoices and the amounts owed thereunder, and demanded payment.[20]  After Brazos ceased operations, the carriers that subcontracted with Brazos to transport Minsa's goods also made demands on Minsa to reimburse them for the freight charges that they incurred when they shipped Minsa products.[21]

---

[15] Minsa Complaint, ¶ 5.01 and Exhibit 1 to the Complaint.
[16] Minsa Complaint, ¶ 5.01 and Exhibit 1.
[17] Minsa Complaint, ¶ 5.03; Andrews Amended Answer (Docket Nos. 154 and 156), p. 3 ¶ 14; Navajo Amended Answer, p. 3 ¶ 14.
[18] Minsa Complaint, ¶ 5.07; Exhibit 8; FNB 107-112.
[19] Minsa Complaint, ¶ 5.03.
[20] Long Affidavit and Exhibit 5; FNBApp. 0043; Minsa Complaint 915.04.
[21] Minsa Complaint, ¶ 5.05.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 6

3150801.7

At the date of the filing of this Motion, the total amount that Minsa owes on the Minsa Invoices is $ 312,250.28.[22] FNB seeks to enforce its ownership and security interest in all of the invoices pledged to it by Brazos including any invoices relating to Navajo, Andrews and Minsa.[23]

## III.   ARGUMENT AND AUTHORITIES

Pursuant to Local Rules 56.5 and 56.3, the factual grounds underlying FNB's Motion for Summary Judgment are set forth in the Motion for Summary Judgment, which is incorporated herein.  The evidence in support of FNB's Motion for Summary Judgment is set forth in the Appendix filed with the Motion and incorporated herein.[24]

### A.   Summary Judgment Standard

One of the primary purposes of summary judgment is to dispose of a party's factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986).  Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002).  "A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) *citing Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom*, 47 F.3d

---

[22] Long Affidavit and Exhibit 6; FNBApp. 0044-64.
[23] Andrews Amended Answer (Docket Nos. 154 and 156), p. 13 ¶ 10; Navajo Amended Answer, p. 13 ¶ 9; FNB Answer to Andrews/Navajo's Crossclaims, ¶ 9.
[24] The Appendix is cited as "(FNB App. #)."

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 7

3150801.7

at 1462.  Further, a "plaintiff cannot successfully oppose the defendant's motion by making conclusory allegations without asserting facts to substantiate them." *Aerospace Workers,* 812 F.2d at 222.

"Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Baton Rouge Oil and Chem. Workers Union v. Exxon Mobil Corp.*, 289 F.3d 373, 375-76 (5th Cir. 2002) (citations omitted).  A court must grant summary judgment unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

### B.    Iqbal/Twombly Standard

FNB recognizes that *Iqbal/Twombly* addresses the sufficiency of pleadings to withstand a motion to dismiss for failure to state a claim.  Although this motion is founded on FED.R.CIV. P. 56, and not 12(b)(6), nevertheless *Iqbal/Twombly* is instructive for if a claim fails to satisfy those requirements, it is most surely incapable of withstanding a motion for summary judgment.

Dismissal of claims is appropriate under Federal Rule of Civil Procedure 12(b)(6) where the claimant fails to allege "enough facts to state a claim to relief that is plausible on its face" and thus does not "raise a right to relief above the speculative level." *Montoya v. Fedex Ground Package Sys.*, 2010 WL 3081504 at *3 (5th Cir. 2010) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544 at 570.).  A plaintiff's statement of the claim must include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However,

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
<u>AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u> – Page 8

3150801.7

the statement must present more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1940. "[A] formulaic recitation of the elements of a cause of action will not do." *McClure v. Biesenbach*, 355 Fed. Appx. 800, 803 (5th Cir. 2009) citing *Twombly*, 550 U.S. at 555. Here, the Andrews/Navajo claims fail to even satisfy *Iqbal/Twombly*.

## IV.    FNB's Claims Against Minsa

### A.    Minsa's Interpleader Claim is Improper

Minsa has filed an interpleader action asserting that "a conflict exists as to who actually owns the proceeds owed by Minsa Corporation for services provided through Brazos Logistics, Inc., for the transport of its product."[25] The test for determining whether an interpleader is proper under 28 U.S.C. 1335 is (1) if there is a single fund at issue and (2) whether there are adverse claimants to that fund. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999); *Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12377 at 4-5 (N.D. Tex. 2004) *citing* WRIGHT, MILLER & KANE, Federal Practice & Procedure: Civil 2d § 1714 (1986). "The burden is on the party seeking interpleader to establish that an interpleader action is justified.")*InterFirst Bank Dallas, N.A. v. Purolator Courier Corp.*, 608 F. Supp. 351, 353 (N.D. Tex. 1985). If the district court finds that the interpleader action has been properly brought, the district court will then make a determination of the respective rights of the claimants. *Id.* When there is no genuine issue of material fact, the second stage can be adjudicated at summary judgment. *Id.*

As discussed hereafter Minsa's interpleader fails for two reasons. First, there is no reasonable or justifiable conflict as to who is the owner of the funds to be paid on the Minsa Invoices. Second, the Co-Defendant Carriers and FNB are not "adverse" to one another as

---

[25] Minsa Complaint, p. 13, l. 5.06.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. -- Page 9

3150801.7

Minsa alleges because Minsa holds separate obligations to each of the parties who are seeking a claim to the funds.

> **1.      Minsa's Interpleader is Improper Because there is No Legitimate Conflict as to the Owner of the Funds**
>
> **a.      FNB is the sole owner of the Minsa Invoices**

This interpleader is improper because there is <u>no</u> reasonable or legitimate conflict as to who owns the Minsa Invoices and amounts due thereunder.  The following summary judgment evidence establishes that FNB is the sole owner of the Minsa Invoices.   In August 2000, Brazos entered into a Factoring Agreement with FNB, wherein it provided Brazos with a revolving line of credit and in return Brazos "assign[ed] and s[old] to the Bank, as absolute owner, [Brazos'] entire interest in such of its currently outstanding Receivables . . . as well as its future Receivables represented by Invoices [Brazos] deliver[ed] to the Bank."[26]  FNB properly notified Minsa that it was the <u>owner</u> and the holder of a perfected security interest in the Minsa Invoices in 2009; however Minsa failed to pay the amounts owed on these invoices.[27]  There are neither pleadings nor legal authority establishing that any of the Co-Defendant Carriers <u>own</u> the Minsa Invoices or the amounts owed thereunder.  Rather, the Co-Defendants allege that Minsa owes them unpaid freight charges as stated on the outstanding bills of lading.

> **b.      FNB has a perfected security interest in the Minsa Invoices**

Further, there is no reasonable question as to who holds a superior interest in the invoices because FNB holds a perfected security interest in the Minsa Invoices which arose prior to the time that the Co-Defendant Carriers incurred any freight charges to ship Minsa's products.  The general rule with regard to priority of perfected security interests is "first in time, first in right."

---

[26] Long Affidavit and Exhibit 2; FNBApp. 0006 ¶ 2.1.
[27] Long Affidavit and Exhibit 5; FNBApp. 0043.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 10

3150801.7

*Barr v. White Oak State Bank*, 677 S.W.2d 707, 710 (Tex. App.–Tyler 1984, no pet.). Chapter 9 of the Texas Business and Commerce Code governs secured transactions in Texas. *In re Dale*, 2008 WL 4287058, at *3 (Bankr. S.D. Tex. 2008) (quoting *Franklin Nat'l Bank v. Boser*, 972 S.W.2d 98, 101 (Tex. App.–Texarkana 1998, pet. denied)). A security interest is perfected if it has (1) attached and (2) the security interest has been perfected pursuant to Chapter 9 of the Texas Business and Commerce Code. TEX. BUS. & COM. CODE § 9.308(a); *Franklin Nat'l Bank*, 972 S.W.2d at 102.

There are three requirements that a secured party must meet to perfect a security interest in an account receivable. First, a security interest attaches when (1) the debtor signs a security agreement containing a description of the collateral; (2) the secured party gives value for the security interest; and (3) the debtor obtains rights in the collateral. TEX BUS. & COM. CODE ANN. § 9.203(b); *Fisher v. First Nat'l Bank of Memphis*, 584 S.W.2d 515, 516 (Tex. App.–Amarillo 1979, no writ); *Borg-Warner Acceptance Corp. v. Wolfe City Nat'l Bank*, 544 S.W.2d 947 (Tex. App.– Dallas 1976, no writ). Second, to create a perfected security interest in accounts receivable, the secured party must file a financing statement with the Texas Secretary of State. *See* TEX. BUS. & COM. CODE §§ 9.310 and 9.501(a)(2).

The summary judgment evidence establishes that FNB holds a prior perfected security interest in the funds to be paid on the Minsa Invoices. Pursuant to Section 3.3 of the Factoring Agreement, Brazos granted the Bank "a security interest in all of its present and future accounts, instruments, contract rights, chattel paper, documents and general intangibles ... and any proceeds from those ... to secure all of [Brazos'] Obligations.[28]   Further, on December 7, 2000,

---

[28] Long Affidavit and Exhibit 2; FNBApp. 0008 ¶ 3.3.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 11

3150801.7

filed a Financing Statement with the Texas Secretary of State thereby perfecting its security interest in the following Brazos' property:

> All of Debtor's accounts, notes, drafts, acceptances, instruments, chattel paper and general intangibles, and all guaranties and suretyship agreements relating thereto and all security for the payment or performance thereof, whether now existing or hereafter existing; all proceeds, monies, income, benefits, collections and products thereof and thereon and attributable or accruing thereto; all goods which give rise or may give rise thereto, including, without limitation, all returned or repossessed goods and other goods the sale or delivery of which gave rise or may give rise to any of such accounts, notes, drafts, acceptances, instruments, chattel paper or general intangibles, including the right of stoppage in transit, and the products and proceeds thereof; and all rights of Debtor, whether or not earned by performance, under contracts to sell or lease goods or render services, and all proceeds thereof.[29]

Therefore, FNB has provided this Court with conclusive summary judgment evidence to establish that is has a perfected security interest in the Minsa Invoices.  By meeting all the requirements to perfect its security interest in the Minsa Invoices, FNB has provided "notice to the world" of their interest in the Minsa Invoices.  *Tarbox v. Soris* (In re Biggerstaff), 2004 Bankr. LEXIS 837 (Bankr. N.D. Tex. 2004) ("Lienholders perfect their security interests to give constructive notice to the world of their interest in the covered collateral.").  *See, e.g., Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 122 (Tex. App.—Houston 1996, writ denied).  Minsa was aware of all of these facts <u>before</u> it filed this interpleader action.

### c.      FNB Directly Notified Minsa of its Ownership Interest

Furthermore, there is no legitimate or reasonable conflict as to the owner of the funds because FNB notified Minsa that Brazos assigned its ownership rights to the Minsa Invoices and putting Minsa on notice that it should pay FNB, not Brazos the amounts owed on the Minsa Invoices.  Once it learned that FNB owned the amounts owed on the Minsa Invoices, Minsa

---

[29] Long Affidavit and Exhibit 4; FNBApp. 00040-42.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
<u>AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u> – Page 12

incurred specific obligations to FNB. Under Texas Business and Commerce Code § 9.406, Minsa was under an obligation to pay FNB for services performed by Brazos once Minsa received notice that Brazos assigned its interests in its accounts receivable to FNB. Pursuant to the Texas Business and Commerce Code § 9.406,

> An account debtor on an account . . . may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee.

TEX. BUS. & COM. CODE ANN. § 9.406(a).

Thus, once proper notice is received, "if an account debtor fails to comply with a valid assignment . . . the account debtor may be liable to the assignee for the amount of the improper payment." *FDIC v. Registry Hotel Corp.*, 639 F. Supp. 812, 814 (N.D. Tex. 1986) (*citing Estate of Haas v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136, 1139 (5th Cir. 1980); *Holloway-Houston, Inc. v. Gulf Coast Bank & Trust*, 224 S.W.3d 353, 359 (Tex. App. — Houston 2006, no pet.) (affirming the judgment of the trial court, determining that an assignee-bank properly notified a corporation of the assignment of the corporation's debt, and thus the corporation was liable to the assignee-bank for the amount due to the assignor).

The summary judgment evidence establishes that on December 1, 2009 FNB properly notified Minsa that it had a perfected security interest in and was the rightful owner of the Minsa Invoices and the amounts owed thereunder.[30]  Minsa has failed to pay $312,250.28 to FNB, and instead filed this interpleader action and deposited FNB's funds in the Court's registry.[31]

Therefore, FNB is entitled to summary judgment as a matter of law because there are no genuine issues of material fact that (1) FNB is the owner of the Minsa Invoices and the amounts

---

[30] Long Affidavit and Exhibit 5; FNBApp. 0043.
[31] Long Affidavit and Exhibit 6; FNBApp. 0044-64.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page **13**

owed thereunder; (2) FNB also had a perfected security interest in the Minsa Invoices and the amounts owed thereunder; (3) FNB made a formal demand for payment of the Minsa Invoices on Minsa; and (4) Minsa failed to pay FNB what is rightfully owed to it on the Minsa Invoices. Accordingly, for these reasons, Minsa's interpleader complaint is improper.

**2.      Minsa's Interpleader is Improper because the Co-Defendants are not Adverse to One Another Thus There is No Single Fund**

Further, the interpleader action is improper because FNB and the Co-Defendant Carriers are not actually "adverse" to one another.  "Adversity is <u>not</u> met when a stakeholder, [. . .], may be liable to both parties because of multiple obligations." *See Hartford Life & Accident Ins. Co.*, 1997 U.S. Dist. LEXIS 18670 at *5.  "If an interpleader plaintiff could, 'as a matter of theory, justifiably be found liable to both sets' of interpleader defendants, the interpleader complaint is <u>improper</u> and should be dismissed." *Fresh Am. Corp.*, 2004 U.S. Dist. LEXIS 12377, 4-5 *citing Bradley v. Kochenash*, 44 F.3d 166, 168-69 (2nd Cir. 1995).[32]

FNB and the Co-Defendant Carriers, including Andrews/Navajo are not "adverse" to one another because Minsa will not be relieved of its liability to the Co-Defendant Carriers (i.e., the Co-Defendant Carriers will be barred from asserting their claims against Minsa) when the Court awards the funds in the Court's registry to FNB, or vice versa.  As stated previously, Minsa is liable to FNB for the amounts owed on the Minsa Invoices pursuant to FNB's ownership and perfected security interest in the Minsa Invoices and the amounts owed thereunder.  However, based upon the Co-Defendant Carriers' unpaid freight charges, Minsa is also separately liable to

---

[32] A quintessential example of a <u>proper</u> interpleader action, is an insurance case where a decedent's mother and daughter both claimed to be the beneficiary of the decedent's life insurance policy, the insurance company filed an interpleader complaint, seeking a determination of who was entitled to the life insurance proceeds payable as a result of the decedent's death. *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745 (S.D. Tex. 2001).

<u>DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u> – Page 14

3150801.7

the Co-Defendant Carriers, including Andrews/Navajo, to pay the freight charges incurred in transporting Minsa's products.[33]  Therefore, Minsa's interpleader is improper because FNB and the Co-Defendant Carriers do not have "adverse" claims against Minsa.

In conclusion, Minsa has not presented any legal authority to support the conclusion that if Minsa is liable to the Co-Defendant Carriers for the unpaid freight charges, that Minsa is entitled to set off the freight charges from the amount owed to FNB on the Minsa Invoices.  In the alternative, Minsa has not presented any legal authority that would allow the Court to conclude that, if Minsa is liable to FNB for the unpaid amounts due on the Minsa Invoices, the Co-Defendant Carriers are no longer entitled to recover the unpaid freight charges from Minsa as consignee of the delivered products.  Absent such authority, Minsa's interpleader action is improper.  *See Fresh Am. Corp.*, 2004 U.S. Dist. LEXIS 12377 (Lynn, J.) (holding that Wal-Mart's interpleader was improper where it failed to show that the carrier's suit for freight charges against Wal-Mart would be barred if Wal-Mart were found liable to the produce grocer for the unpaid produce sales, or vice versa).

**B.    Minsa Should Not Recover Attorney's Fees on their Interpleader Complaint**

Minsa requests this Court to award them attorneys' fees in this interpleader action from the interpled funds.  To determine whether attorney's fees should be awarded on the interpleader plaintiff, the courts have recognized a general rule that in order for an interpleader plaintiff to recover an award of attorneys' fees from the interpleaded funds, he must be a "disinterested" stakeholder, or have no interest in who receives the funds.  *Trof, Inc. v. Marshall*, 2010 U.S. Dist. LEXIS 54552 (D. Tex. 2010). *citing Ware v. Anderson*,  2010 WL 670031, at * 1 (E.D. Tenn. 2010).  However, an award of attorney fees and costs to a stakeholder, is not automatic

---

[33] Minsa Complaint, p. 13, 5.05.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 15

3150801.7

because the decision rests within the discretion of the court.  *See Gulf Oil Corp. v. Olivier*, 412 F.2d 938, 946 (5th Cir. 1969).

When determining whether an award of attorney's fees in a interpleader action is appropriate, a court should examine: "(1) whether the case is simple or involved; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly protracted the proceedings." *Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 411, 417 (D. Tex. 2005) *citing Noeller v. Metropolitan Life Ins. Co.*, 190 F.R.D. 202, 206 (E.D. Tex. 1999).  Any fees awarded should be "modest." *Id.* at 207.

As discussed in the previous section, Minsa should not be awarded attorneys fees because the interpleader action is improper.  FNB is the sole owner and has a prior perfected security in the Minsa Invoices interest which <u>cannot</u> be defeated by the Co-Defendant Carriers' claims to freight charges.  Second, Minsa has multiple obligations, which makes it individually liable to both FNB and the Co-Defendant Carriers separately.  Therefore, because the interpleader is improper, Minsa should not be awarded attorney's fees.

However, even if the interpleader was proper, Minsa's attorneys' fees still should not be granted for the following reasons.  This case is not complicated or involved.  This is a lien priority case.  Further Minsa has not provided any unique services for either FNB or the Co-Defendant Carriers in this action.  Therefore, an award for attorneys' fees on Minsa's behalf is improper.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
<u>AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u>** -- Page 16

3150801.7

### C.     FNB's Indebtedness Claim Against Minsa

As discussed earlier, the summary judgment evidence proves that Minsa is indebted to FNB for the entirety of the funds owed on the Minsa Invoices because FNB is the sole owner and has a prior perfected security interest in the Minsa Invoices.[34]  Prior to Minsa interpleading the funds into the Court's registry, FNB properly notified Minsa that Brazos assigned the account receivables to FNB; however Minsa failed to pay FNB the amounts that are rightfully owed on the Minsa Invoices.[35]  Therefore, there are no genuine issues of material fact in regard to Minsa failure to pay FNB the amounts owed to it.  Accordingly, summary judgment should be entered in FNB's favor.

### D.     FNB's Claim for Attorneys' Fees

FNB is entitled to attorneys' fees for its efforts to collect the amounts owed on the Minsa Invoices because Minsa breached its Transportation Agreement with Brazos when it failed to pay the amounts that it owed on the Minsa Invoices within sixty days of its receipt of the Minsa Invoices.[36]  Pursuant to Section 38.001 of the Texas Civil Practices and Remedies Code, "a person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for [. . . ] a written contract."  TEX. CIV. PRAC. REM. CODE 38.001.  A party is entitled to attorneys fees incurred when (1) the claimant is represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.  TEX. CIV. PRAC. & REM. CODE § 38.002; *Envtl. Conservation Org. v. Bagwell*, 2005 U.S. Dist. LEXIS

---

[34] Long Affidavit and Exhibit 2; FNBApp. 0005- 0013; Exhibit 4; FNBApp. 0040-42.
[35] Long Affidavit and Exhibit 5; FNBApp. 0043; Exhibit 6; FNBApp. 0044-64.
[36] Minsa Complaint, ¶ 5.01 and Exhibit 1.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 17

22027 *14-15 (N.D. Tex. 2005) (the claim for attorney's fees failed because the developers failed to present the claim to the subcontractor before filing suit as required under Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2) to recover such fees).  Further, as assignee, FNB is able to collect attorneys' fees because it is entitled to any relief that Brazos itself could have received.  *Home Owners Mgmt. Enters. v. Mid-Continent Cas. Co.*, 2005 U.S. Dist. LEXIS 22524, 17-18 (N.D. Tex. Oct. 3, 2005) ("As the assignee of [Defendant], [Plaintiff] "stands in the shoes of [its] assignor" and thus is entitled to any relief [Defendant] itself could have received.) (explanatory phrases added); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 778 (N.D. Tex. 2006) *citing Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir. 1996) ("An assignee stands in the shoes of his assignor.").

        The summary judgment evidence establishes that Brazos' sold and assigned FNB its ownership and rights to collect the debt owed on the Minsa Invoices, yet Minsa failed to meet its obligations to pay the debts owed pursuant to the Transportation Agreement with Brazos to either FNB or Brazos.  In 2000, Brazos entered into a Factoring Agreement with FNB wherein it assigned and sold its "right, title and ownership" in its account receivables to FNB.[37]  In January of 2009, Brazos and Minsa entered into a Transportation Agreement for Brazos to transport their products wherein Minsa agreed to pay each invoice within sixty (60) days after its receipt of such invoice.[38]  In December of 2009, FNB informed Minsa that it had purchased the invoices from Brazos, that it was the owner of the Minsa Invoices and that Minsa was to pay FNB, not Brazos, the amounts owed on the Minsa Invoices.[39]  Minsa did not pay FNB (or Brazos) within sixty days

---

[37] Long Affidavit and Exhibit 2; FNBApp. 0006 ¶ 2.1.
[38] Minsa Complaint, ¶ 5.01 and Exhibit 1 to the Complaint.
[39] Long Affidavit and Exhibit 5; FNBApp. 0043.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 18

of receiving the outstanding Minsa Invoices, instead filing their Interpleader Complaint.[40] As a result, FNB filed its counterclaim of indebtedness to collect the $312,750.28 in funds owed on the Minsa Invoices.[41]

Due to Minsa's failure to pay the amounts due on the Minsa Invoices, FNB retained William Frank Carroll and the firm of Cox Smith Incorporated to institute this action to protect its interests in the amounts owed pursuant to the Minsa invoices.[42] To date, FNB has been billed $65,721.00 in attorneys' fees in this case. There is also $20,000.00 in fees for unbilled time or time estimated to be incurred in completing the proceedings on the motion for summary judgment. Further, if it becomes necessary to defend an appeal in this matter before the United States Court of Appeals for the Fifth Circuit, it is anticipated that FNB will incur approximately $30,000.00 in additional attorneys' fees. Furthermore, if it becomes necessary to respond to a petition for writ of certiorari to the United States Supreme Court, it is anticipated that FNB will incur an additional sum of $15,000.00 in attorneys' fees. Finally, if the Supreme Court of the United States of America grants the petition, FNB anticipates incurring an additional $40,000.00 in attorneys' fees. The affidavit of FNB's lead counsel, William Frank Carroll and attached fee statements, establish the reasonable and necessary attorneys' fees FNB has and will incur in this litigation.[43] FNB is entitled to recover its attorneys' fees.

## V.    Andrews/Navajo's Claims against FNB

Andrews and Navajo filed crossclaims against FNB seeking to obtain a portion of the interpleaded funds. The primary theory upon which their crossclaims are founded is one of

---

[40] Long Affidavit and Exhibit 6; FNBApp. 0044-64.
[41] FNB Answer to Interpleader at p. 6.
[42] Long Affidavit and Affidavit of William Frank Carroll; Exhibit 7; FNB 0065 – 106.
[43] Id.

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 19

constructive trust.  However, if Andrews/Navajo have any claims they must be independent of the pledged invoices.  Those claims may be against Minsa or Brazos or both, but they do not take precedence over FNB's claims.

### A.  Andrews/Navajos' Constructive Trust Claim

Andrews/Navajo assert a general and factually unsupported claim that a constructive relationship should be imposed because Brazos was a fiduciary of Andrews/Navajo and that it was therefore required to hold funds in trust for Andrews/Navajo.  Andrews/Navajo's claims fail to meet even the pleading requirements of *Iqbal/Twombly* because Andrews/Navajo have failed to plead facts sufficient to create a plausible claim that a constructive trust should be imposed.

Under Texas law, to succeed on a claim of constructive trust, the plaintiff must establish (1) a breach of a fiduciary relationship or, in the alternative, that actual fraud was committed; (2) unjust enrichment of the wrongdoer; and (3) tracing of the property to an identifiable res. *Godwin Gruber, P.C. v. Deuschle*, 261 F. Supp. 2d 682, 696-697 (N.D. Tex. 2003); *Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dep't Stores, Inc.)*, 929 F.2d 197, 201-202 (5th Cir. 1991) (applying Texas law).  "A constructive trust must be toward specific property that has been wrongfully taken from another who is equitably entitled to it." *In re Loftis*, 40 S.W.3d 160, 165 (Tex. App. — Texarkana 2001, no pet.) *citing Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 849 (Tex. App. — Fort Worth 1982, no writ).

### 1.  Andrews/Navajo's Pleading Do Not Meet the *Iqbal/Twombly* Standards

As stated previously in this Motion, FNB recognizes that *Iqbal/Twombly* addresses the sufficiency of pleadings to withstand a motion to dismiss for failure to state a claim. Nevertheless *Iqbal/Twombly* is instructive in this case because if Andrews/Navajo's claims fail

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 20

3150801.7

to satisfy their *Iqbal/Twombly* pleading requirements, their claims surely are incapable of withstanding a motion for summary judgment.

First, Andrews/Navajo's pleadings have failed to even plead basic facts to support a constructive trust claim. Andrews/Navajo have only asserted conclusory statements in their pleadings. For example, Andrews/Navajo allege <u>nothing</u> to factually support their conclusory statement that the "underlying freight charges are not the property of Broker and represent a res trust created."[44] Further, Andrews/Navajo do not provide the factual bases for the claim that the underlying freight charges were "held by the Broker for the benefit of the underlying carriers [. . . .]."[45]

Likewise, Andrews/Navajo fail to allege any factual bases for the conclusory statement that the "accounts receivable constitutes a res trust held for the benefit of third parties, including, without limitation, Defendant [Carrier]."[46] Finally, Andrews/Navajo provide no factual bases for their assertion that "the relationship between Brazos Logistics, Inc. and Defendant was at all times here relevant a fiduciary relationship arising from the aforesaid trust [. . . ]."[47] Accordingly, applying the *Iqbal/Twombly* standard, these statements are mere "threadbare recitals" of the elements of a constructive trust claim. If the pleadings in a case fail to even allege valid claims for relief, summary judgment is surely proper. As a matter of law, Defendants are entitled to summary judgment as to Andrews/Navajo' trust related claims.

Moreover, the Carriers' pleadings regarding the existence of a "trust" relationship assumes an event that has never occurred: receipt of the funds by Brazos. Even if it is assumed

---

[44] Andrews (Dockets 154 and 156) Answer, p. 11, ll. 19-20, Navajo's Answer, p. 11, ll. 22-23.
[45] Andrews (Dockets 154 and 156) Answer, p. 11, ll. 21-22; Navajo's Answer, p. 12, ll. 1-2.
[46] Andrews (Dockets 154 and 156) Answer, p. 12, ll. 2-4; Navajo's Answer, p. 12, ll. 6-7.
[47] Andrews (Dockets 154 and 156) Answer, p. 12, ll. 16-17; Navajo's Answer, p. 12, ll. 19-20.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** -- Page 21

*arguendo* that there existed some hypothetical trust arrangement between Brazos and the Carriers under which Brazos was required to hold a portion of the funds that Minsa paid to Brazos for the benefit of the Carriers, Brazos never received the money and therefore could not misapply it. <u>Putting the matter differently, until it is determined that *Brazos* has a right superior to FNB to the funds in the registry of the Court, Brazos has nothing to segregate or hold in trust for anyone.</u>

As previously noted, FNB's ownership interest and pre-existing security interest trumps any possible right of possession Brazos may have in the funds in the Court's registry.  Having failed to allege or prove any fiduciary relationship between themselves and *Minsa,* any purported relationship with *Brazos* is irrelevant and will not support their claims.  This lack of relationship is an alternative basis on which the Court should grant FNB's motion for summary judgment.

### B.      Andrews/Navajos' Claim for Injunctive Relief

Andrews/Navajo request that this Court enter an injunction to restrain FNB from asserting its priority security interest in the amounts owed on the Minsa Invoices. Andrews/Navajo has failed to plead the necessary legal elements required for this Court to issue an injunction.  Second, the Andrews/Navajo's pleadings do not meet the standards set forth in *Iqbal/Twombly* as Andrews/Navajo have failed to plead facts sufficient to allege the necessary elements for a claim for injunctive relief.

### 1.      Standard for Injunctive Relief

When a party seeks injunctive relief, the plaintiff must establish that (1) the movant has a substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury if the preliminary injunction is not granted; (3) that its harm outweighs the harm to the opposing party if the preliminary injunction is granted; and (4) the preliminary injunction is in the public

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
<u>AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.</u> – Page 22

3150801.7

interest. *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (U.S. 2008); *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) *citing Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).   The Fifth Circuit requires strict application of this four-part test because "a preliminary injunction is an extraordinary remedy" and "should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621-22 (5th Cir. 1985). "[G]ranting a preliminary injunction is to be treated as the exception rather than the rule." *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Andrews/Navajo have failed to set forth the requisite facts to create a plausible claim for injunctive relief.

### 2.      Likelihood of Success on the Merits

As to the first element, likelihood of success on the merits, Andrews/Navajo's claims must fail for three reasons.  First, and as demonstrated previously, FNB has a clear and primary claim to the interpleaded funds as to the full amount of its ownership/security interest.  Thus even assuming Andrews/Navajo had a claim, it is subordinate.

Second, however, Andrews/Navajo has no valid claim to the interpleaded funds.  As demonstrated previously, there are neither pleadings nor legal authority supporting the assertion of a constructive trust.  The relationship of broker-carrier carries with it no fiduciary component. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 320 (5th Cir. 2002) ("A fiduciary duty is not lightly created.") *citing Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App.–Houston 1994, writ denied) *Beasley v. Avery Dennison Corp.*, 2005 U.S. Dist. LEXIS 15133 (W.D. 2005). ("A fiduciary relationship is one which imposes extraordinary

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 23

3150801.7

obligations.").[48]   Also, FNB purchased the Minsa Invoices from Brazos, advanced funds for those receivables and took an ownership and security interest in the proceeds of those receivables.   When a party such as FNB advances funds, it can hardly be unjustly enriched if it is simply repaid for its advance of funds.

For all of the foregoing reasons, Andrews/Navajo has no likelihood of success on the merits of their claim.

### 3.   Irreparable Harm

Second, Andrews/Navajo did not plead any facts to show that Andrews/Navajo would suffer irreparable harm if the Court did not grant them injunctive relief.   Rather, Andrews/Navajo assert that they "suffered damages as a result of [FNB's] actions."[49]   Bare allegations of what may or is likely to occur are of no value in establishing irreparable injury.   *See, e.g., Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674-75 (D.C. Cir. 1985).   Further, because Andrews/Navajo seek only money damages, their injury is clearly not irreparable.   Allegations of economic loss do not constitute irreparable harm; on the contrary, injury is irreparable for purposes of a preliminary injunction only if it cannot be remedied through economic means, i.e. damages. *Consolidated Restaurant Operations Inc. v. National Processing Co., LLC,* 2002 WL 1432469, slip op. at *6 (N.D. Tex. 2002) ("There is abundant case law in this circuit and other federal courts that where money damages are adequate, there is no irreparable injury."); *Morgan v. Fletcher,* 518 F.2d 236, 240 (5th Cir. 1976)("The possibility that adequate compensatory or other

---

[48]  Under Texas law, "there are certain legal relationships which necessarily give rise to a fiduciary duty. The kinds of relationships which necessarily give rise to a fiduciary duty are those of partners, attorney-client, principal-agent." *Beasley v. Avery Dennison Corp.,* 2005 WL 1719222, *5 (W.D.Tex.,2005).
[49]  Andrews Answers (Docket Nos. 154 and 156), p. 13, ¶ 10; Navajo Answer, p. 13 ¶ 10.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK**
**OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION**
**AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** -- Page 24

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm").

Therefore, because Andrews/Navajo's injury can be remedied by damages, their harm, by definition, is not irreparable.

### 4.      Relative Harm and Public Interest

Third, Andrews/Navajo did not plead any facts demonstrating that the harm they would suffer as unsecured creditors, outweighs the harm posed to FNB, a secured creditor with a perfected security interest in the funds owed on the Minsa Invoices.  To the contrary, the summary judgment evidence establishes that FNB is the <u>owner</u> of the amounts owed on the Minsa Invoices.[50]  Further, FNB, as a holder of a security interest covering the Minsa Invoices, perfected that security interest by filing the Financial Statement with the Texas Secretary of State in 2000, thereby giving "notice to the world" of its claims to the entire amounts owed on the invoices in an effort to protect itself from subsequent claims to the amounts owed on the Minsa Invoices.[51]  *Tarbox v. Soris*, 2004 Bankr. LEXIS 837 (Bankr. N.D. Tex. 2004) ("Such is the balance between lienholders and subsequent parties; lienholders are protected to the extent they have taken sufficient steps to provide the world with notice of their claim.").  There are neither pleadings nor legal authority to support the assertion that Andrews/Navajo's claim should defeat FNB's ownership and perfected security interest in the amounts owed under the Minsa Invoices. Finally, Andrews/Navajo did not set forth any facts in its pleadings to substantiate a claim that the public's interests will be served if this Court granted a preliminary injunction to stop FNB from attempting to collect the amounts on the Minsa Invoices, which it rightfully owns.

---

[50] Long Affidavit and Exhibit 2; FNB App. 0014-39.
[51] Long Affidavit and Exhibit 2; FNBApp. 0008 ¶ 3.3; Exhibit 4, FNBApp 0040-42.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 25

Therefore, Andrews/Navajo have failed to carry their burden of showing that injunctive relief is warranted. Accordingly, summary judgment should be entered in FNB's favor on

## VI.   CONCLUSION

Brazos has terminated its business operations and has not paid the numerous debts that it owes to its former business associates, including the Co-Defendant Carriers. After coming to the realization that Brazos reneged on their agreement to pay the Co-Defendant Carriers' freight charges before it closed up shop, Minsa now seeks to relieve itself of its liability to pay those outstanding charges by filing this interpleader action. Andrews/Navajo' injunctive relief claims.

Minsa deposited the monies that are rightfully owed to FNB in the Court's registry with the hope that the Court will deduct the freight charges from the amounts that Minsa owes to FNB. Adversely, Andrews/Navajo, who recognize that they are unsecured creditors of the now defunct Brazos and that Minsa is attempting to avoid its legal obligation to pay those freight charges, desire to have this Court elevate their claims to the interpled funds above FNB's prior perfected security interest in those funds.

FNB's status as the "first in time, first in right" perfected secured creditor and owner of the amounts owed on the Minsa Invoices cannot be defeated because Brazos and/or Minsa failed to pay its debts to the Co-Defendant Carriers. FNB was not a party to any agreements between Minsa, Brazos and/or the Co-Defendant Carriers in regard to the payment of the freight charges. Minsa, not FNB, should be responsible for its business decision to entrust Brazos with fulfilling Minsa's legal obligation to pay the Co-Defendant Carriers' freight charges.

Either of the scenarios proposed by Minsa or Andrews/Navajos would render FNB's status as an owner and priority secured creditor in the Minsa Invoices meaningless. Accordingly,

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. – Page 26

3150801.7

this Court should grant FNB's Motion for Summary Judgment on its indebtedness claim against Minsa and the Andrews/Navajos' factually deficient trust claims and requests for injunctive relief.

## VII.  PRAYER

For the reasons set forth herein and in FNB's Motion for Summary Judgment, FNB respectfully requests that this Court grant summary judgment in its favor, finding that Minsa's interpleader action was filed improperly, that Minsa is not entitled to attorneys' fees, that FNB should recover on its indebtedness claim and claim for attorneys' fees against Minsa. Further, FNB requests that this Court grant summary judgment in its favor on Andrews/Navajos' trust and injunctive relief claims and award FNB all such other and further relief as may be just.

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** – Page 27

3150801.7

Respectfully submitted,

COX SMITH MATTHEWS INCORPORATED
   William Frank Carroll
   State Bar No. 03892500
   Amy M. Stewart
   State Bar No. 24060660


By: _____
   William Frank Carroll

   1201 Elm Street, Suite 3300
   Dallas, TX 75270
   Telephone: 214-698-7800
   Facsimile: 214-698-7899
   E-mail: fcarroll@coxsmith.com
   E-mail: astewart@coxsmith.com

COUNSEL FOR DEFENDANT
STERLING CITY BANCSHARES d/b/a
FIRST NATIONAL BANK OF STERLING CITY,
TEXAS

DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC. -- Page 28

3150801.7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 15 2010, the foregoing Defendant Sterling City Bancshares d/b/a First National Bank of Sterling City, Texas' Brief in Support of its Motion for Summary Judgment Against Counter Defendant Minsa Corporation and Cross Plaintiffs Andrews Logistics, Inc., and Navajo Express, Inc. was electronically submitted to the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case file system of the court. The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record.

William Frank Carroll

**DEFENDANT STERLING CITY BANCSHARES D/B/A FIRST NATIONAL BANK
OF STERLING CITY, TEXAS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AGAINST COUNTER DEFENDANT MINSA CORPORATION
AND CROSS PLAINTIFFS ANDREWS LOGISTICS, INC., AND NAVAJO EXPRESS, INC.** -- Page 29

3150801.7